IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
P. Nicholas HURTGEN, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

P. Nicholas HURTGEN, Respondent.

Supreme Court

*No. 2009AP941–D. Decided September 9, 2009.*

2009 WI 92

(Also reported in 772 N.W.2d 923.)

¶ 1. PER CURIAM. Attorney P. Nicholas Hurtgen has filed a petition for consensual license revocation pursuant to SCR 22.19.[1] He states he cannot successfully defend against pending charges of professional misconduct relating to his conviction, entered following a guilty plea, to one count of aiding and abetting wire fraud in violation of 18 U.S.C. §§ 1343, 1346, and 2 in connection with a long-running federal investigation of corruption in the administration of former Illinois Governor Rod Blagojevich.

¶ 2. Attorney Hurtgen was admitted to practice law in Wisconsin in 1992. He resides in Illinois and is presently the subject of an OLR investigation into these matters.

¶ 3. The facts from the indictment are complicated and will be only briefly summarized by this court. Attorney Hurtgen was a senior managing director in the Chicago office of Bear Stearns & Co. ("Bear Stearns"), an investment bank that did business with Edward Hospital. In December 2007 Attorney Hurtgen was indicted in the U.S. District Court for the Northern

---

[1] SCR 22.19 provides, in pertinent part:

(1) An attorney who is the subject of an investigation for possible misconduct or the respondent in a proceeding may file with the supreme court a petition for the revocation by consent [of] his or her license to practice law.

(2) The petition shall state that the petitioner cannot successfully defend against the allegations of misconduct.

. . .

(5) The supreme court shall grant the petition and revoke the petitioner's license to practice law or deny the petition and remand the matter to the director or to the referee for further proceedings.

District of Illinois on three counts of mail fraud, three counts of wire fraud and one count of extortion in connection with a "pay to play" scheme involving medical facility construction projects in Illinois. Two other individuals, Stuart Levine, a member of the Illinois Planning Board, and Jacob Kiferbaum, owner and operator of Kiferbaum Construction, were also indicted in connection with the same scheme. The indictment indicates that Attorney Hurtgen sought to arrange the financing of a proposed Plainfield hospital and medical center for Edward Hospital.

¶ 4.   The indictment alleges that between early 2001 through at least June 2004, the three men conspired to defraud Chicago Medical School, the Planning Board, and the State of Illinois, among others, in connection with four construction projects.

¶ 5.   According to the indictment, Levine, Kiferbaum, and Attorney Hurtgen agreed they would use Levine's position on the Planning Board to try to force Edward Hospital to hire Kiferbaum's company to build the proposed $90 million hospital and a $23 million medical office building in Plainfield. The plan was to tell Edward Hospital representatives that the Planning Board would not approve the projects unless they hired Kiferbaum to build the projects. Attorney Hurtgen assisted in the scheme because he wanted his employer, Bear Stearns, to receive the financing work for the new Edward Hospital.

¶ 6.   According to the indictment, Attorney Hurtgen agreed to introduce Kiferbaum to the CEO of Edward Hospital. Kiferbaum understood that Levine would direct the CEO to provide him with a kickback. According to the indictment, in mid-December 2003, Attorney Hurtgen called Edward Hospital's CEO and said if the hospital wanted to have certain permits

282

approved, it should postpone its application before the Planning Board on December 17, 2003, to allow time to hire Kiferbaum. Otherwise, the permit would be denied. On December 23, 2003, Attorney Hurtgen and Kiferbaum met with Edward Hospital's CEO to attempt to force the hiring of Kiferbaum's company.

¶ 7.  On January 8, 2004, Attorney Hurtgen met again with the CEO as well as with Edward Hospital's project administrator. When this meeting occurred, the defendants were unaware that the hospital officials were cooperating with the FBI. The indictment alleged that in explaining his role in persuading Edward Hospital officials to hire Kiferbaum's company, Attorney Hurtgen said that Bear Stearns would finance the hospital if it was approved. During the January meeting, the hospital's CEO requested proof that the threats and promises were real. Attorney Hurtgen said he might be able to arrange a situation in which Levine would "inadvertently" bump into the CEO and Attorney Hurtgen. After further discussions, Levine and Attorney Hurtgen went to a restaurant in Deerfield, Illinois, on April 18, 2004, to prove to the CEO that Levine, Attorney Hurtgen, and Kiferbaum were working together and that their threats and promises were real. Levine and Attorney Hurtgen walked over to the table where Kiferbaum and the CEO were sitting and spoke with them about hiring Kiferbaum. Attorney Hurtgen later said he told the CEO that it was "all about money" for campaign contributions.

¶ 8.  As of the April 21, 2004, Planning Board meeting, Edward Hospital had not hired Kiferbaum. Levine voted against the project and the Plainfield hospital application was denied.

¶ 9.  Attorney Hurtgen eventually reached a plea agreement whereby he promised to cooperate with the

investigation in return for a recommendation of a lighter sentence. He entered a guilty plea on February 25, 2009.

¶ 10. Attorney Hurtgen is a Wisconsin-licensed attorney who engaged in felonious behavior by participating in a pay-to-play scheme. Admittedly, Attorney Hurtgen was not acting as an attorney when he engaged in this scheme, but his participation in this scheme reflects serious misconduct that violates the public trust. The OLR recommends revocation as the appropriate sanction, and Attorney Hurtgen does not oppose this recommendation. He acknowledges he cannot successfully defend against the allegations of the pending disciplinary proceeding. He states that he is freely, voluntarily, and knowingly filing the petition for consensual license revocation. He notes that he is represented by counsel, and states that he knows he is giving up his right to contest the allegations of misconduct.

¶ 11. Therefore, we accept Attorney Hurtgen's petition for consensual license revocation, and we revoke Attorney Hurtgen's license to practice law in Wisconsin.

¶ 12. IT IS ORDERED that the license of P. Nicholas Hurtgen to practice law in Wisconsin is revoked, effective the date of this order.

¶ 13. IT IS FURTHER ORDERED that, to the extent he has not already done so, P. Nicholas Hurtgen shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been revoked.

¶ 14. DAVID T. PROSSER, J., did not participate.